35 C.C.P.A.(Patents)

### In re BROWN.
### Patent Appeals No. 5430.

Court of Customs and Patent Appeals.

May 4, 1948.

Westall and Westall and Joseph F. Westall, both of Los Angeles, Cal. (Emory L. Groff, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and HATFIELD and JACKSON, Associate Judges.

JACKSON, Associate Judge.

The Board of Appeals of the United States Patent Office affirmed the decision of the Primary Examiner rejecting all of the claims, 4 to 7 inclusive and 9 to 15 inclusive, of an application for a patent alleging new and useful improvements in "Means and Methods of Vulcanizing" as unpatentable over the prior art. From the decision of the board, this appeal was taken.

Claims 4, 5, 6, 7, 9, 10, and 15 are for apparatus. Claims 11, 12, 13, and 14 are directed to method.

Claims 4, 5, and 13 are illustrative of the involved subject matter and read as follows:

"4. In a vulcanizer, a housing comprising a floor with side walls perpendicular thereto, heating means within said housing, the floor of said housing constituting a platen for application to work to be vulcanized, insulating means in continuous contact with and surrounding the walls of said housing and platen and flush with the working surface of said platen, a base adapted to support work to be vulcanized, and means to urge said platen and insulating means against said base with the work interposed there between.

"5. In a vulcanizer, a base, a compressible air inflated pad on said base for the support of work to be vulcanized, a heating platen adapted for application to work on said pad, and heat insulating means sur-

rounding and in close substantially-continuous contact with lateral edges of and flush with the working surface of said heating platen, whereby heat sufficient for vulcanization from said platen is sharply cut off at the point of contact of said insulating means with the lateral edges of said platen, the combined surface area of said pad and base having a width and length substantially equal to corresponding dimensions of said platen, whereby said insulating means is adapted to contact a portion of the work disposed laterally of and adjacent said platen but supported by said base.

"13. The method of repairing an inner tube of a tire which comprises: (1) vulcanizing a patch over a portion of a tube injury while protecting by an insulating member in contact with an edge of a vulcanizing platen from radiating heat of a vulcanizing platen an immediately adjoining portion of said injury; (2) moving an immediately adjoining portion of said tube injury in position for a second repair vulcanization adjoining said first vulcanization; and (3) repeating said successive steps of vulcanization until said whole injury to the tube has been covered."

The references relied upon are French patent 384,145 January 27, 1908; McNeill 1,913,126 June 6, 1933; Heintz 1,949,275 February 27, 1934.

The alleged invention relates to a vulcanizing device and method for the repairing of rubber bodies, such as pneumatic tubes or other inflatable rubber products, wherein the damaged area is greater than that of the heating surface of the apparatus. The device comprises two elements, an air inflatable bag and a heated platen located above the bag. The bag is supported by a metal frame to resist lateral expansion so that when inflated there is an upward movement of the top wall of the bag. The platen, which is of channel cross-section, opens upwardly, and in the channel there is an electric heating element. Surrounding and in close contact with the platen, which has a smooth flat under-surface, is a wooden rectangular frame. During the vulcanizing operation a cover is put on the top of the platen. The cover is pivotally connected with a clamping member which is designed by downward movement to clamp the body to be repaired between the pad and the platen. The use of an inflatable bag in the vulcanizing operation is said to result in uniform pressure on all parts of the article undergoing repair. The purpose of the wooden frame which supports the platen is to prevent premature vulcanizing of the adjoining part of the rubber body which is next to be vulcanized. The flush position of the frame with the lower surface of the platen also prevents the leaking or squeezing out of fused rubber during the vulcanizing operation. When the area to be repaired is relatively extensive, the vulcanizing operations are done successively and as one portion of the damaged workpiece is vulcanized the clamping member is raised and the rubber body is advanced to bring the next area to be treated into position. It will be seen that by that procedure repeated vulcanizing operations are employed until the entire area to be repaired has been acted upon.

The McNeill patent is for a vulcanizing apparatus. It is designed for the repairing of pneumatic rubber inner tubes. There is disclosed an upper heatable platen and a lower pad pressure member, which, by means of having fluid admitted therein, causes the pad to exert upward uniform pressure against the body of the workpiece. The pressure means of the McNeill apparatus is from the bottom of his device.

The Heintz patent relates to a vulcanizing apparatus for repairing or splicing long rubber belts. The device discloses identical upper and lower structures, a heatable platen on the top section as a floor therefor, and the lower half of the structure possesses a heatable platen on its top portion. When the vulcanizing process is in use, the workpiece is squeezed tightly between the two heated platens. The apparatus comprises a housing, side walls at right angles to the platens, which have heating means within them, and wooden strips or block insulating means in flush continuous contact with the platens. The insulating wooden blocks are on two sides of the platen, whereas the structure, defined by the claims herein, shows the wood-

en insulating frame completely surrounding the platen. The wooden strips or blocks are stated in the specification as serving "to taper off or to reduce the heating at the edges of the platens so that the belt will not be marked." The specification further states that in repairing large size conveyor belts, it may be necessary to employ two or more heating operations to vulcanize the splice and that when a plurality of heating operations are necessary, the platens are separated so that the belt may be shifted for successive vulcanizing.

The French patent deals with electrically heated vulcanizers and is designed particularly for the vulcanizing of pneumatic tires for automobiles and the like. There is disclosed a metallic vulcanizing surface or platen entirely surrounded by a wooden frame or body and flush therewith. It is stated in the patent that the frame of wood is intended to insulate the device by preventing the heat from being dispersed in any direction other than through the vulcanizing means.

The examiner in his statement rejected claim 4 as unpatentable over the Heintz patent. He rejected claims 5, 6, 7, 9, 10, and 15 on the McNeill patent in view of either the Heintz or the French reference. All of the method claims, 11, 12, 13, and 14, were rejected by the examiner on the McNeill patent in view of that to Heintz. The Board of Appeals in its decision expressly affirmed the examiner in his reasons for rejection.

From a reading of the claims herein quoted and an examination of the disclosures of the prior art set forth herein, it is apparent that if there is any invention in appellant's device and method, it must be because of his providing a wooden frame supporting the heating platen with the lower edge of the frame flush with the lower face of the platen.

With respect to claim 4, the only limitation in that claim, which is not specifically set out in the Heintz reference, is the surrounding of the platen in continuous contact by the wooden frame. While the structure of the Heintz patent shows insulating means on two sides only of the platen, we agree with the tribunals below that there can be no invention in applying such insulating means, also, if desired, to the other two sides. Appellant vigorously contends that the insulating strips or blocks of the Heintz structure are not flush with the platen, but are spaced therefrom. An examination of the drawing, particularly Fig. 6 of that patent, clearly shows that the insulating means are in square intimate contact with the edges of the platen and also in face contact with flanges which are integral with the vertical walls of the housing. We find no error in the rejection of claim 4 for the reasons given by the tribunals below.

With respect to claims 5, 6, 7, 9, 10, and 15, it is quite clear that the structure of the McNeill patent contains every limitation defined by those claims with the exception of that of the wooden frame. In the patent there is shown a flexible rubber pad over the cavity in the metal lower chamber, and appellant discloses a flexible container in a corresponding cavity. However, it is only the upper set of appellant's flexible container that cooperates with his platen. Therefore, there can be no patentable difference between the flexible pad of McNeill and the flexible container defined by appellant. It is true that the side walls of the McNeill apparatus appearing above the platen are not vertical but are in a curved inclined line. Those walls, however, have no contact with the work to be done. Consequently their shape can not affect the action of the platen. We do not see any patentable distinction between the apparatus of appellant and that of the McNeill patent merely because, in the latter, it is the lower member which is moved to clamp the work rather than the upper member as shown in appellant's device. Therefore, with respect to claims 5, 6, 7, 9, 10, and 15, the only question is whether or not it would require invention to provide in the structure of the McNeill device a wooden insulating band, such as is shown in the French reference, or the wooden strips of the Heintz structure arranged to surround the platen. In our opinion, it would be obvious to so reconstruct the McNeill device. There surely would be no invention in changing the shape of McNeill's walls from curved to vertical, but even without

that change, we are of opinion that anyone skilled in the art could, without the exercise of invention, apply a wooden insulating band or frame to the McNeill device.

As far as claims 11 to 14 inclusive are concerned, it is clear to us that the method defined therein is nothing more than using the modified apparatus of McNeill, as above described, in an obvious manner.

The decision of the Board of Appeals is affirmed.

Affirmed.

By reason of illness, O'CONNELL, Judge, was not present at the argument of this case and did not participate in the decision.